**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

    H.T.O. ARCHITECT, PLLC,

                Debtor.

**NOT FOR PUBLICATION**

Case No. 19-10915 (MG)
Chapter 7

**MEMORANDUM OPINION OVERRULING OBJECTION AND APPROVING**
**TFR AND FEE APPLICATIONS**

**MARTIN GLENN**
**United States Bankruptcy Judge**

        Pending before the Court is the *Trustee's Final Report* (the "TFR," ECF Doc. # 154) filed by Angela Tese-Milner, the Chapter 7 Trustee (the "Trustee") for the estate of H.T.O. Architect, PLLC (the "Debtor"). The TFR includes (i) the Trustee's application for payment of commissions (the "Trustee's Commission," ECF Doc. # 154-3), (ii) the first and final fee application of the Trustee's counsel Cullen and Dykman LLP ("C&D") (the "C&D Application," ECF Doc. # 154-4), and (iii) the first and final fee application of the Trustee's accountant Gary R. Lampert, CPA ("Lampert") (the "Lampert Application," ECF Doc. # 154-5, and collectively with the Trustee's Commission and C&D Application, the "Fee Applications"). Annexed as Exhibit 2 to the TFR is the *Trustee's Narrative in Support of Her Final Report* (the "Trustee's Narrative," ECF Doc. # 154-2).

The fees and expenses requested in the Fee Applications presently before the Court are summarized below[1]:

| Application | Fees Requested | Interim Fees Paid to Date | Expenses Requested | Interim Expenses Paid to Date |
|---|---|---|---|---|
| Trustee's Commission | $21,131.69 | $0.00 | $0.00 | $0.00 |
| C&D Application | $133,566.00 | $0.00 | $3,827.97 | $0.00 |
| Lampert Application | $28,492.00 | $0.00 | $331.80 | $0.00 |

The objection deadline was January 24, 2022. (*See* ECF Doc. # 155.) A former employee of the Debtor filed a timely objection to the TFR ("Objection," ECF Doc. # 157), and the Trustee filed a response ("Response," ECF Doc. # 158). The Objection characterizes the Trustee's proposed distribution as a "settlement" to which he objects, arguing that the priority claim of the New York State Department of Labor should be paid in full. (Objection at 1.) But there is no "settlement" here; rather, the Trustee proposes to pay all claims according to the priorities set forth in the Bankruptcy Code. Unfortunately, after payment of secured claims and administrative expenses, there is only a small amount available for a pro rata distribution to priority claimants.

---

[1] A final fee application by special litigation counsel, McGrail & Benzinger LLP, in the amount of $37,372.00 for fees and $715.47 for expenses, was previously approved in an Order dated November 2, 2021. (*See* ECF Doc. # 153.)

2

Therefore, for the reasons provided below, the Objection is **OVERRULED** and the TFR and Fee Applications are **APPROVED** to the extent provided herein.

## I.    BACKGROUND

### A.    General Case Background

On March 28, 2019, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. (TFR ¶ 1.) On January 10, 2020, the case was converted to a case under chapter 7. (*Id.*) Jill Mazer-Marino was initially appointed as the trustee (the "Predecessor Trustee"), and, after the Predecessor Trustee resigned, the Trustee was appointed as successor trustee on October 29, 2020. (Trustee's Narrative ¶ 1; C&D Application ¶ 8.)

Upon the application of the Predecessor Trustee and by order entered January 27, 2020 (ECF Doc. # 47), this Court authorized the Predecessor Trustee to retain and employ C&D as general counsel to the Predecessor Trustee, effective as of January 13, 2020. (C&D Application ¶ 7.) After the Trustee was appointed as successor Trustee, an amended retention order was entered to reflect that C&D was retained as general counsel to the Trustee, effective as of October 29, 2020. (ECF Doc. # 110.)

On January 27, 2020, the Court entered an order approving the employment of Lampert as the Predecessor Trustee's accountant, effective as of January 23, 2020. (ECF Doc. # 48.) On April 6, 2021, an amended order was entered to approve Lampert as accountant to the Trustee, effective as of October 29, 2020. (ECF Doc. # 111.)

3

### B. The TFR

As of November 23, 2021, the Trustee had collected total funds of $359,633.73. (TFR ¶ 4.) Of this amount, approximately $290,000 was recovered as avoidable transfers for the benefit of the Debtor's estate. (C&D Application ¶ 13.) The Trustee has disbursed funds totaling $4,442.49 for certain administrative expenses and bank service fees, leaving a balance of $355,191.24 for disbursement. (TFR ¶ 4.) The Trustee states that after paying chapter 7 administrative expenses and secured claims, there are insufficient funds to pay chapter 11 administrative expenses and priority claims in full. (Trustee's Narrative ¶ 3.) Therefore, general unsecured creditors will not receive a distribution. (*Id.*) The Trustee further explains that the Debtor's estate would have been administratively insolvent were it not for the successful efforts of the Trustee and the retained professionals. (*Id.* at ¶ 4.)

### C. The Objection and Response

On January 19, 2022, a former employee of the Debtor filed the Objection requesting that the Court "amend the proposed settlement in favor of paying the full claims of the" New York State Department of Labor. (Objection at 1.) The former employee states that he was "the victim of the unscrupulous and rapacious labor practices HTO engaged in" including "the practice of knowingly and deliberately failing to vest employee contributions to their 401k program." (*Id.*) The Objection further states that the New York State Department of Labor investigated the labor violation claims and found them credible and widespread, and it would be in the interest of justice to support the New York State Department of Labor. (*Id.*)

4

In its Response, the Trustee states that she seeks to pay the New York State Department of Labor in full on its filed administrative expense, in the amount of $6,083.06. (Response ¶¶ 7, 8; *see also* TFR at 18.) The Trustee also states that she will provide a partial payment on the New York State Department of Labor's priority claim for unemployment contributions that is *pari passu* with other filed and allowed priority claims. (Response ¶ 8.) The TFR provides that the New York State Department of Labor has (i) an allowed priority claim (Claim No. 13) of $12,260.55, with a proposed payment is $429.52, and (ii) an allowed priority claim (Claim No. 10) of $4,656.75, with a proposed payment of $163.14. (TFR at 18.) The Trustee asserts that she is not able, and there is no basis, for paying the New York State Department of Labor the full amount of its filed priority claim because other priority claims, including those filed by the New York State Department of Taxation and Finance and the U.S. Department of Treasury, exceed $1 million. (Response ¶ 8.) The Trustee also points out that the New York State Department of Labor did not object to the proposed distribution in the TFR, and requests that the Court overrule the Objection. (*Id*. at ¶¶ 7, 9.)

## II.    LEGAL STANDARD

### A.    The TFR Correctly Proposes Payments to Creditors Consistent with the Priorities Provided in the Bankruptcy Code

Exhibit D to the TFR shows that the Trustee is holding a balance of $355,191.24 in the estate. (TFR, Ex. D.) That exhibit details the proposed payments for secured claims, administrative expenses, and priority claims. Distributions will be made as follows: allowed secured claims – $27,375.00 (leaving a balance in the estate of $327,816.24); allowed administrative expenses in this chapter 7 case – $227,433.73 (leaving a balance in the estate of $100,382.51); allowed administrative expenses from

5

the chapter 11 case before this case was converted to chapter 7 – $55,416.29 (leaving a balance available for distribution for priority claims of $44,966.22).  (*Id.*)  The total of allowed priority claims is $1,185,989.16, which will be paid *pari passu*.  (*Id.*)  The two allowed priority claims of the New York State Department of Labor total $16,917.30, but because of the shortfall in funds available for distribution to priority creditors, the New York State Department of Labor will only receive a total of $592.66.  (*Id.*)  The New York State Department of Labor's allowed priority claims are entitled to the same treatment as the other priority claims.  The Objection provides no rationale why the New York State Department of Labor is entitled to better treatment than other priority claimants.

### B.    The Trustee's Fees

Section 326(a) of the Bankruptcy Code provides:

> In a case under chapter 7 or 11, other than a case under subchapter V of chapter 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.

11 U.S.C. § 326(a).

Before the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCA"), chapter 7 trustee compensation under section 326(a) was subject to the same reasonableness review as other professionals under section 330(a)(3).  COLLIER ON

6

BANKRUPTCY ¶ 330.02[1][a] (Richard Levin & Henry J. Sommer eds., 16th ed. 2022).

After passage of BAPCPA, section 330(a)(7) of the Bankruptcy Code commands that:

> In determining the amount of reasonable compensation to be awarded to a trustee, the court shall treat compensation as a commission, based on section 326.

11 U.S.C. § 330(a)(7).

The majority of courts consider a chapter 7 trustee's fee calculated in compliance with section 326(a) presumptively reasonable and only subject to reduction in "rare instances." *In re JFK Capital Holdings, L.L.C.*, 880 F.3d 747, 753 (5th Cir. 2018); *Mohns*, *Inc. v. Lanser*, 522 B.R. 594, 601 (E.D. Wis.), *aff'd sub nom. In re Wilson*, 796 F.3d 818 (7th Cir. 2015). Reaching this conclusion, courts consider that "[i]n removing Chapter 7 trustees from § 330(a)(3) and directing courts to treat the trustee's compensation as a commission, Congress made clear that a trustee's compensation should be determined on the basis of a percentage, rather than on a factor-based assessment of the trustee's services." *Mohns*, 522 B.R. at 599. Therefore, section 330(a)(7) is "best understood as a directive to simply apply the formula of § 326 in every case." *Id.*

Courts acknowledge that extraordinary circumstances may justify the reduction of a chapter 7 trustee commission calculated under section 326(a) on a case-by-case basis. 3 COLLIER ON BANKRUPTCY ¶ 326.02[1][a] (16th ed. 2022); *see In re Rowe*, 750 F.3d 392, 397 (4th Cir. 2014) ("It suffices to say that, with these broad parameters providing guidance, the bankruptcy courts will be required to make the determination of whether extraordinary circumstances exist in a Chapter 7 action on a case-by-case basis."). Extraordinary circumstances "include situations such as where the trustee's case administration falls below acceptable standards or where it appears a trustee has

7

delegated a substantial portion of his or her duties to an attorney or other professional."

*In re Rowe*, 750 F.3d at 397 (quoting 2 U.S. Trustee, Handbook for Chapter 7 Trustees Ch. 2–1. at 39 (Apr. 2012)).

### C.    Professional Fees

The court may award fees to professionals under section 330 of the Bankruptcy Code. Section 330 provides in relevant part:

> After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328 and 329, the court may award . . .
>
> (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and
>
> (B) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1).

Whether services are necessary is determined from the perspective of the time at which the services were rendered. 3 COLLIER ON BANKRUPTCY ¶ 330.03[1][b][iii] (16th ed. 2022). Services are "necessary" if they benefit the estate. *In re Keene Corp.*, 205 B.R. 690, 696 (Bankr. S.D.N.Y. 1997). The test considers whether services provided were "reasonably likely to benefit the estate" and is objective, asking "what services a reasonable lawyer or legal firm would have performed in the same circumstances." *In re Ames Dept. Stores, Inc.*, 76 F.3d 66, 72 (2d Cir. 1996), *abrogated on other grounds by Lamie v. U.S. Tr.*, 540 U.S. 526 (2004) (citing *In the Matter of Taxman Clothing Co.*, 49 F.3d 310, 315 (7th Cir.1995)). The court "may reduce or disallow a request if the underlying services conferred no real benefit on the estate." *In re Keene Corp.*, 205 B.R. at 696. The court may also reduce compensation if the request is based on incomplete or

inaccurate time records. *See In re Hamilton Hardware Co.*, 11 B.R. 326, 330 (Bankr. E.D. Mich. 1981) (denying an application seeking additional attorney's fees where the "time records submitted by counsel [did] not meet test of adequacy").

Courts may award fees for time spent preparing a fee application "based on the level and skill reasonably required to prepare the application." 11 U.S.C. § 330(a)(6). "It is proper . . . for the bankruptcy court to examine the amount and value of the time spent preparing the [fee] application, and reasonable limits may be placed on compensation for such work." *In re Mesa Air Grp., Inc.*, 449 B.R. 441, 445 (Bankr. S.D.N.Y. 2011) (quoting *In re Bennett Funding Grp., Inc.*, 213 B.R. 234, 249 (Bankr. N.D.N.Y. 1997)). While there is no clear-cut cap on the permissible amount charged for the preparation of fee applications, "the 3–5% range is a useful metric." *In re Mesa Air Grp., Inc.*, 449 B.R. at 445.

Fee applications must also comply with Bankruptcy Rule 2016, which requires "a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." FED. R. BANKR. P. 2016. Bankruptcy Rule 2016 also requires disclosure of any payments previously made to the applicant and of the existence of any compensation agreement between the applicant, their client and any third party who will share the compensation. *Id.* In addition, fee applications must comply with the *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases* ("General Order M-447," *available at* https://www.nysb.uscourts.gov/sites/default/files/m447.pdf). General Order M-447 requires certifications by the professional responsible for compliance with the Guidelines that the fee application has been read, that the application and the fees therein comply

9

with the Guidelines, that the fees are billed at rates customary to the applicant and generally accepted by the applicant's clients and that the applicant does not make a profit on the service provided. *Id.* at 5. General Order M-447 also establish maximums of $0.10 per page for photocopies (or cost, whichever amount is lower); limits on meals to $20 per person, and for meals earlier than 8:00 p.m., reimbursement only if there is an additional 1 ½ hours of work expended after the dinner; and limits on overtime expenses for non-professional and paraprofessional staff unless fully explained and justified, which should include an indication that services were absolutely necessary. *Id*. at 6.

### III.    DISCUSSION

#### A.    The Objection Is Overruled

The Objection requests that the Court amend the proposed settlement in favor of paying the New York State Department of Labor's claims in full. But there is no "settlement" here. Distributions will be made strictly in accordance with the Bankruptcy Code priority scheme. The Trustee explains that, after paying the secured claims and administrative expenses in full, there are insufficient funds to pay in full the priority claims in this case. (Trustee's Narrative ¶ 3; Response ¶ 8.) The TFR provides that the New York State Department of Labor's priority claims will receive payment that is approximately 3.5% of the amount of its allowed claim, which is *pari passu* with the recoveries for the similar priority claims of the New York State Department of Taxation & Finance and the Department of the Treasury. (TFR at 18; Response ¶ 8.) These proposed distributions comply with section 726(b) of the Bankruptcy Code which "makes clear that distribution to § 507 priority creditors shall be made pro rata amongst creditors

10

within the same priority tier." *In re Headlee Mgmt. Corp.*, 519 B.R. 452, 456 (Bankr. S.D.N.Y. 2014); *see also* 11 U.S.C. 726(b).[2]

Therefore, the Objection is **OVERRULED** and the TFR is **APPROVED**.

### B. The Trustee's Commission Is Approved

The Trustee seeks approval of her first and final application for allowance and payment of commissions pursuant to sections 326 and 330 of the Bankruptcy Code. The Trustee has not received any payments for compensation or expenses previously in this case. (Trustee's Commission at 1.) The Trustee seeks a commission of $21,231.69 and $0.00 in expenses. The Trustee calculated her commission pursuant to section 326(a) of the Bankruptcy Code as follows:

---

[2]    11 U.S.C. 726(b) provides:

> (b) Payment on claims of a kind specified in paragraph (1), (2), (3), (4), (5), (6), (7), (8), (9), or (10) of section 507(a) of this title, or in paragraph (2), (3), (4), or (5) of subsection (a) of this section, shall be made pro rata among claims of the kind specified in each such particular paragraph, except that in a case that has been converted to this chapter under section 1112, 1208, or 1307 of this title, a claim allowed under section 503(b) of this title incurred under this chapter after such conversion has priority over a claim allowed under section 503(b) of this title incurred under any other chapter of this title or under this chapter before such conversion and over any expenses of a custodian superseded under section 543 of this title.

11 U.S.C. § 726.

```
19-10915-mg   Doc 154-3   Filed 01/05/22   Entered 01/05/22 16:03:41   Chapter 7
                          Trustee Commission   Pg 1 of 1
Printed: 11/23/21                                                         Page: 1
                          TRUSTEE'S COMPENSATION
Debtor: H.T.O. Architect, PLLC                          Case No.: 19-10915
Computation of Compensation
  Total disbursements to other than the debtor are:                359,633.73
  Pursuant to 11 U.S.C. § 326, compensation is computed as follows:
    25% of First $5000                         5,000.00  =           1,250.00
    10% of Next $45,000                       45,000.00  =           4,500.00
     5% of Next $950,000                     309,633.73  =          15,481.69
     3% of Balance                                 0.00  =               0.00
                                  Calculated Compensation:        $21,231.69
                                       Less Adjustment:                 0.00
                                    Total Compensation:           $21,231.69
                                   Less Previously Paid:                0.00
                           Total Compensation Requested:          $21,231.69
Trustee Expenses
                                      Calculated Expenses:             $0.00
                                         Less Adjustment:               0.00
                                         Total Expenses:               $0.00
                                    Less Previously Paid:               0.00
                               Total Expenses Requested:               $0.00
```

(*Id.*)

The Trustee, upon her appointment, continued to prosecute and commence fraudulent conveyance and preference actions against entities which received voidable payments; this led to the estate recovering more than $355,000. (Trustee's Narrative ¶ 2.) The Trustee seeks a commission within the limits of section 326(a). Therefore, the Trustee's Commission is **APPROVED**.

    **C.**    **The C&D Application Is Approved**

C&D makes its first and final application for the allowance and compensation for professional fees in the amount of $133,566.00 and expenses in the amount of $3,827.97 for services rendered from January 13, 2020 through and including September 30, 2021. (C&D Application ¶ 17.) C&D worked 327.40 hours in connection with this chapter 7 case at a blended hourly rate, excluding paralegals and other professionals, of $407.95. (*Id*. at ¶ 20.) The total amount billed was $136,846.00; however, C&D voluntarily agreed to reduce its fees in connection with preparing the C&D Application to $5,000, which, in addition to an agreement to not charge for certain services, resulted in the total fees requested being $133,566.00. (*Id*. at ¶ 14.) C&D also states that the $133,566.00

12

does not include fees incurred for over 10 hours of services (or $3,300) performed for the Trustee. (*Id.*) Additionally, C&D is not seeking fees incurred representing the Predecessor Trustee in the amount of over $48,000. (*Id.* at ¶ 14 n.2.)

C&D's time was divided into the following project categories: 22.8 hours/$5,120.50 for "General" (time spent reviewing and analyzing the Debtor's books and records, communications with the Trustee, and other miscellaneous tasks) (*id.* at ¶ 24); 32.4 hours/$14,826.00 on Asset Analysis & Recovery (*id.* at ¶ 25); 6.0 hours/$2,663.00 on Asset Disposition (*id.* at ¶ 26); 15.0 hours/$6,710.50 on Case Administration (*id.* at ¶ 27); 5.40 hours/$2,223.50 on Claims Administration and Objections (*id.* at ¶ 28);14.2 hours/$5,858.00 on C&D and Other Retention Applications (*id.* at ¶ 29); 18.4 hours/$5,000.00 on C&D/Other Fee Applications (*id.* at ¶¶ 30–31); and 213.10 hours/$91,164.50 on Litigation (*id.* at ¶¶ 32–34).

C&D seeks to recover $5,000 in fees for preparing its fee application, after its voluntary reduction. (*Id.* at ¶¶ 30–31.) This amount represents approximately 3.74% of the overall fees requested, which is within the 3–5% range of reasonableness. The time-keeping records are detailed, with no block-billing or any other vague entries. The Court finds and concludes that the time records show that the requested fees are both necessary and reasonable. (C&D Application at 36–99.) Therefore, the fees requested by C&D are **APPROVED**.

The C&D Application details the following expenses: $1,143.10 for copies; $1,400.00 in Court Fees; $19.67 for Delivery Services/Messenger telephone; $111.47 for online research; $1,008.73 on postage; and $145.00 on other expenses. (*Id*. at 34.) Photocopies were appropriately charged at $0.10 per copy and overall the expenses

13

appear to be reasonable, necessary, and in compliance with all rules and guidelines.  (*Id.* at 101–02.)  The expenses are **APPROVED**.

### D.     The Lampert Application Is Approved

Lampert makes his first and final application for the allowance and compensation for professional fees in the amount of $28,492.00 and $331.80 in expenses for services rendered from January 23, 2020 through September 28, 2021.  (Lampert Application ¶ 8.)  Lampert spent 78.80 hours in professional services and 7.6 hours in paraprofessional services at a blended hourly rate of $329.77.  (*Id.* at 1.)  Lampert's time was broken up into the following project categories: 73.1 hours on Analysis of Books and Records (*id.* at ¶¶ 13–17); 4.3 hours on Books and Records (*id.* at ¶¶ 18–19); 2.8 hours on Claims (*id.* at ¶ 20); and 6.2 hours on Other Services (*id.* at ¶¶ 21–22).

The Lampert Application includes time sheets for services rendered and the descriptions of services provided are reasonable and sufficiently detailed.  (*Id.* at 19–32.)  Also included is a description of the expenses requested which are made up of photocopy charges at $0.10 per copy and pacer charges.  (*Id.* at 32–35.)

Therefore, the Lampert Application for fees and expenses is **APPROVED**.

## IV.     CONCLUSION

For the foregoing reasons, the Objection is **OVERRULED** and the TFR and Fee Applications are **APPROVED**.

A separate order approving the TFR and Fee Applications will be entered.

Dated:  February 3, 2022
        New York, New York

*Martin Glenn*
_____
MARTIN GLENN
United States Bankruptcy Judge
